## LIABILITY FOR INJURY TO AN AUTOMOBILE WHILE BEING LOADED FOR SHIPMENT.

### Circuit Court of Summit County.

ARTHUR H. MARKS v. THE UNITED STATES EXPRESS COMPANY.

#### Decided, October 11, 1909.

##### Negligence—Evidence—Ambiguous Signal—Agency.

1. Whether an ambiguous signal, given by a representative of an express company to the owner of an automobile who was about to propel it up skids into a car for the purpose of having it transported, was a signal to come forward or stop, is a question for the jury.

2. Even if such signal was intended as a signal to come forward and move the automobile up into the car, the owner of the automobile was not thereby constituted the agent of the express company in such sense as to make his subsequent negligence, if any, the negligence of the company.

*Roger & Rowley*, for plaintiff in error.
*Hoyt, Dustin, Kelley, McKeehan & Andrews*, contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The plaintiff in error was the plaintiff in the original action. He brought his suit for damages which he alleges resulted to an automobile owned by him, and which the defendant undertook to transport from the city of Akron, Ohio, to the city of Boston, Mass. The plaintiff was the owner of an automobile and arranged with the defendant, through its agent, Mr. Hadden, at Akron, for the transportation of the automobile to Boston.

It appears from the evidence that at an earlier date the defendant had transported for the plaintiff an automobile from Akron and that considerable difficulty had been experienced in the loading of the auto upon the railroad car of the defendant, and it was agreed between the plaintiff and Mr. Hadden that instead of loading with pulleys and cables, as had been done in the case of the former transportation of an auto, this auto might be loaded by propelling it by its own propelling machinery

onto the car. The car had doors opening at the end sufficient to allow the auto to pass in. It was arranged that these doors should be opened and that skids or planks should be placed lengthwise from the sill of these car doors out on to the railroad track at such an angle that the auto could be run up these skids by its own power and thus into the defendant's car. On or about the 28th of June, 1907, pursuant to this arrangement, the defendant, through its agent, Hadden, called the plaintiff by telephone and said to him that the car was ready for the shipment of the auto, and asked if the plaintiff could have his auto at the place of loading that afternoon. The plaintiff replied that he would not be able to have the auto there that afternoon, but that he would have it there about 9 o'clock the next morning. There is a disagreement in the testimony as to whether a call was made through the telephone by Hadden to the plaintiff on the morning succeeding the conversation already mentioned, but whether such further conversation took place or not is not important, for on that succeeding morning the plaintiff propelled his auto up to the railroad yard where the defendant's car was standing. He passed that car and having reached a point about 150 feet from the car of the defendant, turned his auto around so as to be headed toward the open end of the defendant's car into which the auto was to be run. Four planks, used for skids, were then in place at the end of the defendant's car leading from the sill of the door of such car out on to the earth between the rails of the railroad track. These planks were placed two on either side of the door sill, leaving a space between the two on the right and two on the left, but on each side, that is to say, on both the right and the left side, the two planks on the sides respectively were placed so close together, that there was a pathway for the wheels of the auto on either side to run up to the railroad car. The outer plank on either side was nailed to the sill of the car door, and stakes were driven into the ground at the end of each of these outer planks. The inner planks were neither nailed nor staked. This being the situation, the plaintiff having his auto in the position already mentioned, saw Hadden, who was standing near the railroad car, make a

signal with his hand. This signal the plaintiff understood in-
dicated that he was to come forward with his auto and run up
the skids, that were ready for him. Hadden says that what
was meant by the signal was the plaintiff should stop and not
come forward, as the skids were not ready. Understanding,
however, as the plaintiff did, that the motion made by Hadden's
hand indicated that he should come forward with his auto, he
moved it forward at a slow rate of speed steering it upon the
pathway made by the planks so that it rolled up the planks
until the forward wheels of the auto were inside of the car
upon the floor, when one or both of the inner planks upon which
the end wheels of the auto then were, tipped to such a degree
that the end wheels were left without support and the auto
dropped and fell and was thereby greatly damaged and injured.

Upon the trial the jury returned a verdict for the defendant.
Judgment was entered upon that verdict and by proper proceed-
ings the case is here for review.

It is urged here that the court erred in refusing a motion
for a new trial, because it is said that the verdict was not sup-
ported by the evidence and was against the weight of the evi-
dence. It is urged further that the court erred in its charge to
the jury and in its refusal to charge as requested by the plaintiff.

The claim that the verdict is not sustained by the evidence is
based upon the proposition that the evidence clearly shows negli-
gence of the defendant, and clearly shows that there was no neg-
ligence on the part of the plaintiff. We are not prepared to say
that either of these claims is correct. Hadden had in his con-
versation with Marks by telephone said to him that the car on
which the auto was to be shipped, was ready; he had not said
to him that all the arrangements for loading the car were ready.
He testifies that he had expected before the car should be run
up these planks or skids that the two on either side should be
held together by cleats nailed on each end. It seems to be
conceded that this seems somewhat improbable because of the
fact that the outer plank on either side had already been nailed
to the sill of the car. One would suppose that if these planks
were to be cleated together, the cleating would have to be done

before they had been put in place, and not after the outer planks had been nailed to the sill of the car, so that in order to put on the cleats one would have to get under these planks and drive his nails upward, holding the cleats that were to be put on up against the planks. But whatever plan was to be adopted, or whether any plan would have been adopted to make this pathway more firm than it was, it is not clear that the defendant had ever notified Marks that it was ready for use, or that it had not intended to make it more safe for use before the auto should be run upon it. Certainly, under the evidence, the jury might well have found that Marks had never been notified that the skids were ready for the loading of his auto. He had been notified that the car was ready and he had received a signal, which at best can be said to have been ambiguous as to its meaning, and if it were ambiguous before moving his auto on these skids, for it must have been recognized by both the plaintiff and the defendant's agent, that as this was a novel proceeding it would be attended with danger, unless the pathway was made firm and secure, and very secure, for this auto weighed some 3500 pounds, it would not be safe to run the auto upon the pathway of skids. It is said, however, that as the plaintiff with his machine was something like 150 feet from the foot of these skids when he received whatever signal he did receive, and he was seen to move forward with his auto by Hadden, Hadden should have recognized that he misunderstood the signal and given him a signal by motion of his hands or by words, or in some way, that he could not have misunderstood. The explanation of this made by Hadden is by no means so unreasonable as that the jury might not well have believed it. That is, that he saw Marks moving forward with his auto, supposing that he had understood his signal and that he would stop at the foot of the skids and not attempt to go any further until he had learned that everything was safe. Surely, if instead of a wave of the hand Hadden had called out to the plaintiff "Do not come," and had supposed that the plaintiff understood him, whereas, as a matter of fact the plaintiff understood him to say "come," it could not well be claimed that the defendant was bound, as

having thereby wrongfully induced the plaintiff to move his auto forward on the skids. We regard it as by no means clear that the defendant was negligent. As has already been said, this manner of loading an auto was a novel one, and it must have been recognized by all concerned, that considering the great weight of the auto great care should have been taken to have the planks or skids properly placed and secured, and the jury might well have found that since the only notice that the plaintiff had received that the skids were all ready for him to move forward was this signal with the hand, which surely had no certain meaning, the plaintiff did not exercise the care which a prudent man should have exercised under the circumstances. We can not reverse the judgment on the ground that the verdict was contrary to or against the weight of the evidence.

This, perhaps, would cover the proposition urged with vigor by counsel for the plaintiff, both in oral argument and in his brief, that the auto, from the time Hadden made the signal to the plaintiff, up to the time of the accident, was in the custody and under the control of the defendant. It was under the control of the plaintiff, and it can not properly be said that even if the signal given by Hadden was that the plaintiff move his auto forward and up into the car that the plaintiff thereby became the agent of the defendant in such wise that his negligence could be adjudged to the defendant, as between him and the defendant.

The argument is made that if there was any negligence on the part of the plaintiff after he received the signal, such negligence would be chargeable to the defendant on the ground that the plaintiff was acting from that time on as the agent of the defendant. This is clearly unsound. If it had been the auto of somebody else and the signal had been such that the jury should find that it called for the plaintiff to go forward with his auto and drive up the skids, the position would not be so clearly untenable as it is when the plaintiff himself is the one who moved forward the auto, and who was negligent, if anybody was negligent, in moving it forward. If this auto had been the property of some other person and if the plaintiff really had been

the agent of the defendant, and if while so acting as such agent he had by his negligence caused the injury to the auto, he would himself have been liable, to the owner of the auto, notwithstanding the fact that the defendant would also have been liable in such damages. The negligent agent of one who causes injury is not himself relieved from liability because his principal is liable.

What has already been said disposes of the complaint made that the court erred in saying to the jury that this was a simple case of negligence. The court was right in so saying, because either this was an accident for which nobody was liable, or it was a case where, either by reason of the negligence of the plaintiff or the negligence of the defendant or the combined negligence of the two, injury resulted to the property. If the plaintiff was entitled to recover in this action, the burden was upon him, as the court held, to show the negligence of the defendant, and if his own testimony raised a presumption of negligence on his part, as we are inclined to think it did, the burden was upon him to remove the presumption.

Complaint is made, as has already been said, that the court failed to give to the jury the plaintiff's request to charge, marked "A," found on page 109 of the bill of exceptions.

This was properly refused, as we think, for the reasons already suggested in discussing the other propositions in the case.

The judgment of the court of common pleas is affirmed.